GIFFORD *v.* HARTSON.

1. ACCOUNTING—PRACTICE—SUBSTANTIAL COMPLIANCE WITH COURT RULES SUFFICIENT.

Where, in a suit for accounting and to restrain foreclosure of land contract, the trial judge heard testimony, the case was then referred to circuit court commissioner, before whom further testimony was taken and transcript of same filed, and, on all testimony taken, the judge made an accounting, there was substantial compliance with Circuit Court Rules Nos. 51–53.

2. SAME—LACHES—ESTOPPEL—MORTGAGES—PAYMENT.

Where suit for accounting and to restrain foreclosure of land contract, based on breach of contract, was brought within limit fixed by statute, and defendants were not injured by delay in bringing suit, defense of laches may not be urged; nor are plaintiffs estopped by the fact that they continued monthly payments until they had paid more than was advanced, and, the transaction being in the nature of a mortgage, they had right to insist that they be called on only for such sums as had been advanced for their credit.

3. MORTGAGES—NOTICE—APPLICATION OF MORTGAGE.

Where plaintiffs executed mortgage to secure money advanced to contractor to build house, defendant, who had knowledge of the details of the transaction, could not use mortgage to secure antecedent debt of contractor to him.

4. ACCOUNTING—AMOUNT DUE.

Finding of court as to amount due plaintiffs under accounting, *held*, justified by the record.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 30, 1929. (Docket No. 133, Calendar No. 34,191.) Decided June 3, 1929.

Bill by Joseph A. Gifford and another against Oscar S. Hartson and another for an accounting

and to restrain foreclosure of a land contract. From decree for plaintiffs, defendants appeal. Affirmed.

*Walter M. Nelson,* for plaintiffs.

*Richard S. Woodliff,* for defendants.

Fellows, J. This bill is filed for an accounting, to restrain proceedings for the forfeiture of a land contract, and to adjust the rights of the parties under a land contract and a building contract. It will not be necessary to fully detail the facts until we take up the questions urged. For the present a general statement of what is involved will be sufficient. Plaintiffs owned a lot on Exeter avenue in the city of Detroit, which cost them $800. Defendant Woodliff agreed to erect a home on the lot on the cost-plus plan. Plaintiffs were to advance $1,200, and Woodliff was to finance the transaction through the Society of Savings. He was unable to do this, and an arrangement was made with defendant Hartson, a friend of Woodliff, and to whom Woodliff was then indebted. The lot was deeded to Hartson, and he gave back a contract to reconvey on payment of $4,200 in deferred payments. The transaction was clearly in the nature of a mortgage, and was in effect, and we are satisfied was understood by the parties to be, a construction loan. All parties were familiar with the deal, and it is fairly apparent that Hartson was to advance up to $3,000 from time to time as needed to pay for material and labor. Everyone seems to agree that the house was not fully completed. Defendant Woodliff insists he was not furnished sufficient money to complete the job, and plaintiffs insist more than sufficient was furnished, that they had to have a place to live in, and, there-

fore, moved in and put it into its present condition themselves. The questions we are asked to consider are: (1) The practice on reference to a commissioner; (2) laches; (3) estoppel; (4) the merits.

1. The trial judge heard the testimony of the parties and of a number of witnesses, and concluded that an accounting should be had. He referred the case to a circuit court commissioner; further testimony was taken; the commissioner accepted the accounts filed by defendants as correct; his report was approved by an *ex parte* order filed by defendants' counsel; exceptions were filed to the report. The matter having reached the attention of the trial judge, he severed the Gordian knot by directing the filing of a transcript of the testimony taken before the commissioner, and, considering that testimony, together with the testimony taken before himself, made an accounting and found a sum was due plaintiffs, and the sum so found became the amount of the personal decree against defendants. It is urged by defendants' counsel that neither plaintiffs' counsel nor the court followed Circuit Court Rules Nos. 51, 52, and 53. We are not satisfied that either or any of the parties have literally followed these rules. There was sufficient compliance—substantial compliance—to bring before the court the real question for final determination, *i. e.*, had defendants been overpaid, and if so, how much.

2 and 3. These subjects will be considered together. There was considerable delay in bringing this action, during which time plaintiffs made their payments regularly without protest to defendant Hartson. It is urged that the delay in bringing the action prevents recovery against both defendants, and the payments without protest of the monthly sums fixed in the contract works estoppel as to de-

fendant Hartson. It should be borne in mind that the action is not for rescission, but for relief on the ground of breach of contract, and is brought within the limit fixed by the statute. Attention should also be called to the fact that plaintiffs have, by their monthly payments, paid to defendant Hartson more money than he claims to have advanced. It is really difficult to perceive how the delay in bringing the action and the constant payments made on the contract has injured either defendant. The record established that the father of defendant Woodliff is an attorney and drew the papers for the parties; that he was the only attorney consulted by plaintiffs until just before this bill was filed. The following testimony given by Mrs. Forrest Gifford is not disputed:

"Between July, 1920, and the conversation with Hartson in 1925 had a hundred or more conversations with Richard S. Woodliff concerning the finishing of the house; I demanded the house be finished; he said that we were cheated; he was ashamed of the way his son had acted; he said he would use his utmost influence with his son to get the house finished; to see we had a fair deal.

"*Q.* Did he ever finish it?

"*A.* No.

"*Q.* Or do anything with it after July?

"*A.* No.

"*Q.* After you had gone along you went ahead to make payments?

"*A.* Yes.

"*Q.* Why?

"*A.* R. S. Woodliff's influence that he would get the house finished. We consulted no attorney except Richard S. Woodliff who examined the abstract in this deal."

The record discloses that the Woodliffs and defendant Hartson are intimate friends, friends of a lifetime; before this transaction Hartson was aiding the son in financing his building operations; the son was then in his debt, for how much does not appear; they spent some time together in Florida. We are satisfied that Hartson knew all about the transaction, made a construction loan, and knew that plaintiffs understood, at least tacitly, that he was to advance money only as it was earned under the terms of the contract. Manifestly, he could not use this mortgage given by plaintiffs to secure the payment of any other than their indebtedness to him; with the knowledge he had he could not use it for the benefit of defendant Woodliff in the discharge of his antecedent debt. Plaintiffs under the facts appearing in this record had the right to insist that they be called upon under the instruments which together constituted a mortgage, a construction loan, only for such sums as had been advanced for their benefit, and they had not lost such right either by laches or estoppel.

4. Both sides called contractors and builders who had examined the house and who gave their estimates of the actual amount of cash necessarily expended for work and material up until the defendant Woodliff breached his contract and quit the job. It is patent that the trial judge accepted the testimony and figures of Benjamin Doyle, a builder of 16 years' experience, as being the most reliable. The record, we think, justifies the confidence reposed in his figures. He impresses us as fair, honest, and as speaking from authority. He hunted up his actual invoices for the year the work was done to get the actual unit prices. He found the actual prices paid for labor. He was entirely disinterested,

and at least one of defendants' experts spoke in the highest terms of him. He fixed the sum expended as $2,658.07. Making due allowance for interest earned, the trial judge fixed the amount due plaintiffs on the day the decree was entered at the sum of $540. It is not pointed out that the computation is inaccurate if Mr. Doyle's figures are accepted, as we think they should be.

We perceive no good reason for disturbing the decree appealed from, and it will stand affirmed, with costs.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.